This is a compensation suit in which plaintiff claims to have been totally and permanently disabled as the result of an accident, which occurred in the course of his employment by defendant, on or about the 13th day of February, 1946. Compensation was paid through date of May 16, 1946, and defendant denies liability on the ground that any injuries received by plaintiff have not continued to be disabling subsequent to said date.
After trial there was judgment in favor of defendant rejecting plaintiff's demands, from which judgment plaintiff has brought this appeal.
There is no dispute as to the occurrence of the accident on the date set forth, nor as to the fact that plaintiff sustained some injury. The sole issue tendered herein concerns the extent of plaintiff's injuries and the duration of disability resulting therefrom.
At the time of the accident plaintiff, a 55 year old colored man, was working at a concrete mixer, standing on a slightly elevated runway between the mixer and a platform above the concrete floor of the plant. The conveyor belt broke and loosened pieces of timber above plaintiff's head, apparently joists of the shed in which he was working, which scattered with some force in various directions. In attempting to escape from the danger of the flying pieces of timber plaintiff fell backward against the platform and thence to the concrete floor, sustaining injuries to his back. The accident occurred a short while before noon and plaintiff was taken to the company doctor for treatment some hour or so later. The testimony shows that plaintiff sat on the seat of the cab of the truck during the ride from the plant to the doctor's office and that he climbed the steps to the second floor of the building, in which the doctor's offices were located, without assistance from any other person. Examination by the physican, Dr. Morgan Simonton, disclosed no abrasions, lacerations, bruises or other objective signs of the injury which was then diagnosed as a back sprain in the sacroiliac region.
Plaintiff continued under the treatment of Dr. Simonton until April 19, 1946, at which time payment of compensation was terminated, and he consulted an attorney, who had examinations made, and, subsequently, made demand upon the company for compensation. Payments of compensation and treatment of plaintiff were resumed *Page 73 
until May 17, 1946, on which date plaintiff was discharged from treatment and payment of compensation was terminated.
In determining this matter it is necessary to establish the existence vel non of back injuries as well as the extent and effect thereof. Always a difficult problem for solution, the case at hand is further complicated by the complete disagreement in opinion between the medical experts who testified as witnesses. The trial consumed parts of three days and the transcript of evidence comprehends 154 pages of which more than 125 pages consists of the highly technical testimony of nine medical experts, four of whom testified on behalf of plaintiff and five on the part of defendant.
Plaintiff's principal medical witness, Dr. C.H. Mosley, testified that the injuries consisted of a fracture through the lamina of the fifth lumbar vertebra on each side; a crushing of the fourth lumbar vertebra; a marked scoliosis; a crushing injury to the third lumbar vertebra; and callous formations between the third, fourth and fifth lumbar vertebra, all resulting from the injury sustained.
The existence of most, if not at all, of the back conditions described by Dr. Mosley were substantiated by the opinions of Dr. H.V. Collins, Dr. J.E. Walsworth and Dr. I.J. Wolff. All of these witnesses expressed the opinion that plaintiff was permanently and totally disabled from performing manual labor.
The opinions expressed by plaintiff's witnesses were flatly contradicted by the medical experts who testified on behalf of defendant, namely, Dr. Morgan Simonton, Dr. W.L. Smith, Dr. A. Scott Hamilton, Dr. D.M. Moore and Dr. John G. Snelling, who concurred in the opinion that plaintiff had not sustained any serious injuries as the result of the accident of February 13, 1946, which proved disabling after May 17, 1946.
In connection with the testimony of the medical experts several x-ray films were introduced in evidence which are described by exhibits numbers as follows:
(a). P-1 and P-5 made by Dr. Mosley on April 19, 1946;
(b). P-2, P-3 and P-4 made by Dr. Mosley on September 19, 1946;
(c). D-1 and D-2 made by Dr. D.M. Moore on February 22, 1946, at the request of Dr. Simonton;
(d). D-3 and D-4 made by Dr. Moore on July 30, 1946, at the request of Dr. Hamilton.
(e). D-5 and D-6 made by Dr. W.L. Smith on February 6, 1942 (in connection with diagnosis of an alleged back injury received by plaintiff while employed by Commercial Solvents Company).
The testimony in connection with the x-ray films, which unquestionably must be considered as being of prime importance in any diagnosis of the character of injuries involved in this case, was given as follows:
For plaintiff:
(a). By Dr. C.H. Mosley, a physician who has been practicing since 1907, but who was not qualified, insofar as the record discloses, as an expert x-ray technician or roentgenologist, and whose own testimony is to the effect that it has been his custom in his practice to interpret x-ray films made by a machine which he owned and operated.
(b). Dr. H.V. Collins, a general practitioner of some 36 years standing, who made a complete physical examination of plaintiff, but who testified that he made little attempt at x-ray interpretation, customarily depending upon explanations and interpretations by a qualified roentgenologist.
(c). Dr. J.E. Walsworth, a qualified surgeon, practicing since 1914, who made an examination of plaintiff on the 16th or 17th of September, 1946.
(d). Dr. I.J Wolff, who has been a general practitioner since 1921, who made an examination of plaintiff on September 13th and 14th, 1946, and who testified that his interpretation of x-ray pictures is limited, but that the pictures involved in this case were so plain as to render the opinion of a roentgenologist unnecessary.
For the defendant:
(a). Dr. W.L. Smith, a specialist in x-ray diagnosis and treatment since 1926, and who was at the time of trial the radiologist in charge of x-ray work for the Conway Memorial Hospital in Monroe.
(b). Dr. Morgan Simonton, who has been practicing medicine since 1933, and *Page 74 
who was the physician who examined plaintiff on the day of the injury and treated him for his back condition until May 17, 1946.
(c). Dr. A. Scott Hamilton, a graduate of Tulane Medical School in 1931; surgical interne at the University of Minnesota, 1931-32; teacher of anatomy in said school, 1932-33; a fellow in orthopedics at Louisiana State University and Charity Hospital at New Orleans, 1933-36; practitioner of orthopedics in Monroe from 1936 to 1941; a member of the armed services, 1941-46, in which time he rose from the rank of First Lieutenant to that of Colonel, and was, among other distinguished services, Chief of Orthopedics and Chief of Surgery at Camp Claiborne Hospital, and surgical consultant to the Eighth Army in the Philippines and Japan.
(d). Dr. D.M. Moore, who has been practicing medicine since 1913, and who has been specializing in x-ray diagnosis and treatment for some 25 years and was at the time of trial of this case the roentgenologist of the St. Francis Sanitarium at Monroe, in charge of all x-ray work for that institution, having occupied that position for 21 years prior thereto.
(e). Dr. John G. Snellings, who has been practicing since 1924, and who testified that a considerable portion of his practice necessitated the interpretation of x-rays in connection with traumatic surgical work.
We think no useful purpose would be served by an attempt on the part of this Court, made up of laymen, who are unqualified by education, training or experience to pose as experts in the field of medical science, to enter into a detailed discussion and analysis of the highly involved and supertechnical testimony of the learned gentlemen named above, whose unquestionable qualifications have been set forth more or less in detail, particularly in view of the fact that the expressions of opinions as to the conclusions reached as between these distinguished doctors are irreconcilable.
After careful examination and consideration of all of the medical testimony, we have no hesitancy in expressing the opinion that the same definitely preponderates in favor of the contentions made by defendant in this case. With due deference and the utmost respect to all the medical experts as to the sincerity of their opinions, we are impelled to feel that because of the highly specialized qualifications of defendant's witnesses in the fields of orthopedics and x-ray diagnosis they have better established and justified, the basis for their conclusions.
But, departing for the moment from further discussion of the medical testimony, we feel it desirable to give some attention to the testimony of lay witnesses and to other circumstances in connection with complainant's contentions which properly are entitled to consideration as having important bearing upon the determination of this case.
The learned Judge of the District Court quoted in his written reasons for judgment that plaintiff "gave the court an impression of unreliability and could have misrepresented personal history and subjective conditions to the several examining physicians."
We think the record amply justifies the impression made upon the trial Judge. Plaintiff, after denying any previous back injury in his testimony on direct examination, later admitted on cross-examination that he had forgotten about his employment by Commercial Solvents at Sterlington and a back injury which he had received in the employ of said company in February of 1942. Plaintiff's lapse of memory is rendered the more inexplicable in consideration of the fact that in answer to a question on cross-examination, apparently without hesitation, he gave the exact date of the settlement which he had made on the claim resulting from the injury he had forgotten.
Dr. Simonton, who was the physician in charge of treatment of plaintiff, testified that plaintiff's complaints of pain and suffering increased after treatment; that because of these complaints he had x-rays made some week or 10 days after plaintiff was injured, and that, despite the continuance of treatment, plaintiff appeared to be getting worse rather than better. *Page 75 
The pattern of plaintiff's conduct, as expressed by Dr. Simonton, is practically identical with that which was testified to by Dr. Snellings, who treated plaintiff for the back injury which he allegedly received on February 6, 1942. Dr. Snellings testified that the x-rays taken at that time indicated the existence of an old back trouble; that after treating plaintiff he appeared to get worse rather than better, despite what the doctor regarded as an apparently trivial injury; that as a result he sent plaintiff to Dr. Durham of Shreveport and to Dr. Guy Caldwell at New Orleans for examination, following which plaintiff's claim was settled out of court; and that, in his opinion, the plaintiff was definitely malingering at that time.
The joint petition, judgment and release in connection with plaintiff's claims resulting from an alleged injury of February 6, 1942, are comprehended in the record, and evidence the fact that a compromise settlement was entered into on the basis of payment of the sum of $250 in addition to amounts previously paid, which were shown to have been made at the rate of $10.40 per week for a period of 12 weeks.
In the attempt to substantiate his own testimony plaintiff produced the testimony of two colored friends, but, like the District Judge, we do not find that this testimony has any material bearing upon the case.
We feel assured that neither plaintiff's counsel nor the doctors, who examined him and depended upon his narrative of personal history in connection with such examination, were acquainted with the facts concerning the accident and alleged injury which had taken place some four years prior to the date of the accident here involved.
In consideration of all of these facts, and further in view of the judgment of the lower Court in which we find no error, we have experienced no difficulty in concluding that plaintiff's demands were properly rejected.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.
KENNON, J., absent.